and I'm going to turn it over to Mr. Murphy. Mr. Murphy, you may proceed. May it please the court. Good morning. The appellant Cincinnati and Builders Mutual are asking this court to reverse the district court's grant of summary judgment to the homeowners and remand this case for entry of judgment on several particular or discrete coverage issues, which I'll get to hopefully in a moment, and for a trial to allocate the covered versus non-covered damages, both with respect to the phase one judgment that was entered and has now been finalized by the South Class Supreme Court and the phase two stipulated damages pursuant to the settlement agreement between the parties. What's South Carolina telling us in this case? I mean, we got this reservation rights. We got the Harlinsville case. Looks like it's pretty clear. I didn't come back and, you know, say a few other things. So where are we on this? Well, the Harlinsville case, even standing alone, really doesn't apply in this case because the legal argument that's been recognized in South Carolina for over 100 years, that coverage that waiver, the doctrine of waiver cannot operate to bring an excluded risk within the coverage, was never raised in that case. They simply argued factually whether the reservation rights letters might have not included what they should have. The South Class Supreme Court clarified part of that. The settlement agreement cured part of that, but that's part B of the equation. Part A of the equation was never relied on in Harlinsville, and the district court assumed that it was and granted waiver as to everything. And I would simply say that the South Class Supreme Court explained it most recently in 1966. I'm going to read that quote in just a moment. The three district court judges have applied that rule in the last 12 years in South Carolina in cases cited in our brief. And it's been followed in the liability context, and even though some of the historical cases were more in the life insurance world, Pitts v. New York Life is the case I'm quoting. And it said specifically, the doctrines of waiver and estoppel cannot operate to bring excluded risk within the coverage of an insurance policy, but the doctrines may be applied to forgive conditions which would otherwise cause a forfeiture of the policy. It appears in Harlinsville, there was some idea that perhaps an unallocated verdict was going to be forfeited because the out of jurisdiction cases that our Supreme Court referenced in that case would hold that if it's not allocated, it's not covered, therefore you have to really make sure you let the insured know what they need to do to cooperate at the trial of the first case. Sorry to that Harlinsville case, I realize you read it in a different way, but the language is pretty strong there. Then you get ex parte builders and you maintain to some extent that ex parte builders in any way overrule Harlinsville? It modified it and clarified it in a couple of respects with regards to the grounds for waiver. But the point that I would like to emphasize is the Harlinsville case does not reference 100 years worth of cases that stand for the doctrine that I just read. It cannot be read that way. I mean, we can't do anything about that, right? I mean, we're not the South Carolina Supreme Court. Maybe the South Carolina Supreme Court was wrong to not acknowledge 100 years of precedent when they wrote Harlinsville, but we got to deal with what they gave us. We can't just say, well, they didn't think about it in Harlinsville, so we're not going to follow it. Well, and that's not what we're arguing. We're arguing that a close review of the case. That's what you are. A close review of the case reveals that the Harlinsville did not avail itself of a legal argument that it had. No different than a defendant who fails to raise the statute of limitations. You can't raise it on appeal. Well, there have been a couple of district court cases in South Carolina subsequent to Harlinsville. Have any of them bought your argument? I'm not familiar with any that have applied Harlinsville in the same way that the district court did in this case. And I think the ex parte case goes a long way to saying it was an overreaction. But again, the first part is that the doctrine that we talked about was not argued in the Harlinsville case. And even Judge Duffy in 2009 in a case we cited said, South Carolina courts have repeatedly and explicitly held that waiver cannot create coverage and cannot bring into existence something not covered in the policy. That legal argument does not appear anywhere in Harlinsville. I've read every brief. I've read every pleading. And although it's mentioned in an appellate brief on page 54, and we acknowledge that it was never ruled upon by the special referee, the case really just stands for the fact that under the very lenient appellate review in South Carolina, was there any evidence to support the finding of waiver, which is part B. If you looked at the laid law case, they said, even if Aetna waived its right to deny coverage, so in other words, even if part B is there and there was a waiver under the Harlinsville standard, then the argument fails because waiver cannot create coverage that otherwise wouldn't exist. Everything you've given us is wonderful, but it's nowhere in policy. You got to try to find that. You got to know some South Carolina law and come to that conclusion. I don't know what we are as a federal court, how we look at a state court. I'm going back to Judge Russian who was stuck with it. And I know your opposing counsel can get up and says an inadequate reservation of rights letter is sufficient for waiver. That's what Harlinsville says on its face there now. All the other stuff it should have said, could have said, what it affects. We write opinions all the time, they have tremendous effect and it's horrible, the effects of it. I mean, Supreme Court does it. They come back and recognize it later on, but I don't know what you're asking us as a federal court to do about a South Carolina opinion that basically you're characterizing is that opinion wasn't a very good opinion. It did not address the issues that it should have addressed it. Well, it's not that the opinion didn't, it's that the parties didn't. Parties have to raise the issues that the Supreme Court couldn't address this label argument. I know that distinction, but ultimately it's not a question of the parties. We don't go back and read what parties do, we read opinions. And the South Carolina Supreme Court gives the opinions, not the parties. We don't read parties briefs to say, well, this is that and the Supreme Court meant that. We follow the South Carolina Supreme Court law as being the law of South Carolina. Yes, sir. But I think you can move on from this issue. I don't think you have to rest on that alone, do you? No, because even the deficiencies that were noted in Harleysville don't apply here. So the ex parte case has removed them. I don't think we even get to that. But if we do get to that, the fact that the allocated verdict, and this is why you can see what they were fixated on. There was no need for an allocated verdict in this case. The court in Harleysville also went on to talk about how speculative it would be. Ex parte says it's not speculative. Our district court wouldn't apply the Sims versus Nationwide case. The ex parte builders mutual case made it clear that is still the law and that this is how we resolve coverage disputes in South Carolina by subsequent declaratory judgment action, a phrase that the ex parte opinion uses at least six times. So I have a question about that, because it's Harleysville seems to have this first set of reasoning that says it's not enough to have a cut and paste letter where you just point to certain exclusions and you don't have a discussion of the grounds for it. They distinguish the punitive damages in that letter. Then they move on and say, also, you should advise the insured about this allocation problem, the conflict of interest. Ex parte builders cuts back on that second part, the allocation, the conflict of interest, but doesn't seem to touch the first part of Harleysville, the problems with specificity in the letter. And so is that still the law? I think it is. And how does that apply to the letters in this case? Well, again, in that regard, that is still overlooking the legal argument that wasn't made. The court wasn't ruling on the legal argument in Harleysville, they were just ruling factually. I believe the specific deficiencies they found are more the later ones that include the potential conflicts of interest and not just a cut and paste generic letter. In this case, the district court really didn't find what constitutes the waiver, just said that there was a waiver. And because some of the things that were specific and expressed in the Harleysville case were not mentioned. I would like to point out that some of those deficiencies also were cured by the settlement agreement. The parties entered into a settlement agreement to litigate the phase two damages separate and apart, and the insureds were fully protected and exonerated. It was clear error, even if Harleysville is broad as is being argued by some, to apply it to a stipulated amount of damages between the insurers and the judgment creditors, so to speak, with the insureds being fully protected. That would also apply to the phase one breach of fiduciary duty judgment against Rick Thomas because he was likewise protected personally from that judgment with respect to phase one. So no matter how broadly you apply Harleysville, it had no application to those two specific coverage issues, which were fully agreed upon by the parties. And Stoneledge relinquished its right to argue these things about waiver, but then they abruptly changed their position and renounced that when the Harleysville decision came out. But those have no of the considerations that would have been reached in Harleysville because there was no ongoing exposure to the insureds in that case. There was also a little confusion, Judge Winn, to help divine what our Supreme Court may have been doing. They had six different construction defect coverage opinions in the early 2000s on three cases. One of them was Newman, and in that case, they applied a forfeiture in favor of coverage for a non-allocated arbitration award. That was modified, essentially overruled, by the Supreme Court and the Ex parte Builders Mutual. So when you see what the Supreme Court did in the Ex parte Builders Mutual for a procedure, and there was no argument that waiver can't create coverage made, a legal argument. Factually, it appears Harleysville just said, well, we didn't waive anything. And the special referee said, you did. And the Supreme Court simply said, based on this record, we affirm that a waiver existed. There was never an argument that it doesn't matter. And again, in late law, they didn't even address the sufficiency of the Reservation Rights Letter because they said it doesn't matter. Even if they're insufficient, they can't create coverage in this particular matter. In the Harleysville case, it appears the Supreme Court was focused on the position that an unallocated verdict would not be covered at all. And they have clarified that there's not a windfall for the judgment creditor, and there's not a forfeiture for the insured in that situation. The Ex parte Builders Mutual case made that clear. Can I ask you a... Yes. This is a hypothetical question. Just don't get upset. But if we think that there's a reservation of rights problem here and that Harleysville applies, does that resolve the entire case? Or are there still, even if the reservation of rights letters were inadequate, would there still be additional issues left for us to resolve or for the district court to resolve? I was a little unclear following the district court's reasoning. As I mentioned earlier, there are at least two issues that the Harleysville case would not have applied to. And those were issues resolved in the settlement agreement. That had to do with stipulated damages as to phase two, and in effect, releasing the insured from any further exposure. They're not liable. There's no... But are those issues we have to deal with today? If you could, yes. You could if you piecemeal it. I think she's wrong outright, and the whole case should be remanded. If you felt like the reservation of rights letter issue was insufficient, it was cured by the settlement agreement on those two issues. So you could remand at a minimum those two issues. And the district court said that the reservation of rights letter, that that applied to the phase two issues also. Which is clearly erroneous without ex parte builders mutual and without doing a little bit of a deeper dive into the Harleysville decision to see that the legal argument has been around for a hundred years in South Carolina was never mentioned. Well... All right. We'll hear from the athlete, Mr. Lyons. Thank you very much. May it please the court. Obviously, we believe that Judge Hendricks' ruling should be affirmed. We think that she did an excellent job as her orders make clear that she applied the time these motions were argued, correctly applying Harleysville, and correctly concluding that the deficient reservation of rights letters waived Cincinnati and builders mutual's coverage defenses to the case. As she noted in her, particularly in her response to their motion for reconsideration, their arguments express a lot of frustration with the Harleysville decision, which this court has also addressed this morning. And I don't want to belabor that point, but Harleysville is the law of South Carolina. And from my perspective in builders mutual, the Supreme Court had an opportunity at that time to limit Harleysville, to explain how Harleysville was limited to a certain set of facts, to say what it didn't apply to. They could have addressed a late law decision. And I'd also point out to you that in the builders mutual case, if there was any question about what arguments were considered in Harleysville, and which weren't, Mr. Murphy was the lead lawyer for the appellant in the builders mutual case, and late law again is not mentioned in that case. And I think that's because it's not relevant. Our Supreme Court was clear, Judge Hendricks recognized that her obligation was to follow South Carolina law, and we think that she did it. And it's as simple as that. And this case presents a unique opportunity to see the importance of that law. You know, I'm a trial lawyer more than an appellate lawyer. And when we get in appellate cases, we discuss a lot of things in the context of more intellectual approaches to these legal questions. But the things that concern the South Carolina Supreme Court in the Harleysville case happened in this case. Defense counsel hired by Cincinnati and builders mutual allocated the damages in the trial court, not between what's your work, what's not your work, what may be property damage, what may not be property damage, but allocated them among the causes of action. That's what they did. And now in this case, for going on eight years now, Cincinnati and builders mutual have said, you know what? We don't have coverage for two of the three causes of action that the jury allocated damages to our insurers. And so exactly what Harleysville was worried about happened in this case. What about the punitive damages provision there? Harleysville upheld that. And when you look at that provision and the letters at issue here, they look just about the same thing to me. Isn't it fair to say that Harleysville was mainly concerned with particularly generic denials of coverage? The letters here aren't generic. They cite two specific provisions. Is that correct? How does that work? Well, I think that the letters here were generic, and I think that's what Harleysville was worried about. And I think what Harleysville carved out for us was they said, you know, they took a careful look at the reservation rights letters, and they did note that they thought that the reservation rights letters in that case did sufficiently address the punitive damages issue. Here there's no punitive damages at issue. What here we have is this, for example, the known loss issue that's come up, never mentioned, never mentioned in the reservation rights letter. They're taking the position now that there's no coverage for Merrick on the breach of warranty claim, just no coverage for it, not mentioned in the reservation rights letter. They're taking the position that Mr. Tonnes has no coverage on the fiduciary duty claim because his duties as a board member were related to his activities for IMK, which is not an insured, never mentioned in the reservation rights letter. And the lawyers that they hired to defend Merrick and Mr. Tonnes moved to separate out that jury verdict as they did, allocating damages to specific causes of action, which they now say they have no coverage for. And you know, it's worth record, it's worth reflecting on the record a little bit. You know, I tried to correct that at trial, and the trial judge agreed with me. We took the entire amount of the judgment. We allocated it equally among each cause of action, and then gave all causes of action the benefit of the setoff to try to level the playing field, if you will. They opposed me from 2013 on that issue all the way to 2020 when we argued this case in front of the South Carolina Supreme Court. And the defense lawyers hired to defend Mr. Tonnes stood in front of the South Carolina Supreme Court and told the South Carolina Supreme Court, you should take the setoff, but don't give the fiduciary duty defendants any benefit of the setoff. And Justice James looked at the lawyer for Mr. Tonnes and said, don't you represent Mr. Tonnes, who's one of those defendants? And he said, yes, sir. And Justice James just sort of scratched his head. That's what happened. Those lawyers unevened the playing field for the insured in this case. Can you talk about the settlement and whether that agreement between the parties changes how we power if we apply Harley's bill to phase two or to the fiduciary duty claim? Yes, ma'am. I don't think it has anything to do with the application of Harley's bill at all. As Mr. Murphy said just a moment ago, what we did three years after the trial of phase one, we were finally able to get a trial date for phase two. By that time, this case had been pending in the district court for two years and we were already arguing about coverage. And what we decided was to agree upon what the damages at a trial would be if we tried the case. And then we agreed that we would assume that any verdict would be reduced by the setoffs, excuse me, by the settlement sums that we had received for phase two. And we came up with a net anticipated verdict, if you will, of $2 million. And we both agreed to live with those damages in the context of this coverage case. There was nothing about that agreement that changed any of the coverage positions. And this idea that Mr. Tonnes was somehow released or that that judgment just goes away is just not true. In fact, a month ago, a South Carolina circuit court judge agreed that the judgment doesn't go away. He just entered judgment against Mr. Tonnes for a million dollars, believing that the agreement was simply an effort to protect Mr. Tonnes personally, but it didn't affect the coverage issues at all. So that is a valid judgment as I'm standing before you today in the court of South Carolina, that million-dollar judgment. And no, ma'am, I don't think it affects the Hartleysville arguments at all. You don't have to take all your time. And I wanted to tell you, I'm excited for your new status. When I heard it, I was thinking, I've been trying to figure out how to get senior status in my law firm for about 10 years, and they won't give it to me. Anyway, thank you very much. Thank you. All right. You've got a few minutes for rebuttal, Mr. Murphy. Thank you, Your Honor. Let me address just a couple of brief issues there. We're here to talk about coverage, not about conduct in the tort case, but we do have a Supreme Court opinion that denied the amalgamation sought, which was part of the only base basis apart from waiver, that the district court found coverage for breach of fiduciary duty. And so there are two things that make that ruling wrong. First of all, there could not be a waiver on that because the settlement agreement most assuredly, and we have laid this out in our brief, gave Mr. Tonnes, who was a principal both in the general contracting company, Merrick, and this newly formed LLC to serve as the board before it was turned over to the homeowners, kind of a common thing, that he is fully protected from any effect of the phase one judgment, and whether that judgment was then further released is being argued in South Carolina. Trial court said the judgment's still there, but even if the judgment is still there, Mr. Tonnes was fully protected. It will not be executed against him. And the key to that in coverage is, therefore, he's not prejudiced, and so the settlement agreement cured any deficiency in the reservation of rights letter, just like it did with the phase two damages, because those damages were between the carriers and the judgment creditors from phase one. There was no possibility that they would ever apply. The carriers stepped in and did the right thing and are willing to pay what their share is once they get a fair trial on allocation. So if there were any deficiencies, which again overlooks the fact that you can't create coverage with waiver, can't use that doctrine, really wasn't even pled affirmatively in this case, but those two issues are certainly subject to remand entry of judgment on the breach fiduciary duty because the Supreme Court has now said there is no amalgamation. So Mr. Tonnes, even if he's wearing two hats, it's not covered. The fact that he was just wearing one hat for this new LLC that created and controlled the homeowner's board prior to turnover to the real individual owners, that ends any possibility of coverage for him. This case should be at a minimum, first thing, remanded for that judgment to be declared not covered. Secondly, for a trial on the allocation of phase two. The carriers are not taking the position of the breach of warranty. South Carolina law is kind of clear the way it imposes warranty liability, and so that's not true. And then with regard to NovaSolace, you don't have to issue a reservation of rights to tell someone what's going to happen in the future. The lawsuit was filed in 2009. The first reservation of rights letter from Cincinnati referenced policy periods that went from 08 to 09, 09 to 2010. There is an issue of fact as to whether or not the insurers knew about the lawsuit and the client, not the lawsuit, but the claims that were being made prior to April 1 of 2009. That would be an issue of fact that would be need a remand for trial. The 2010 and 2011 policies, there's no basis to find waiver because that was a future event. The lawsuit had been filed. The policies were in the insured's hands, and there's no duty under any case that's ever been argued. You have to reserve your rights as to future contingencies. Plus, the insured's never came back and asked for coverage under any subsequent policies. And the reservation rights letter in the record said coverage may apply on the policy through April 1 of 2010. In other words, the first two policy terms of four Cincinnati policy terms. So the waiver arguments are not applicable to known loss under the last two policies. They're not applicable to the breach of fiduciary duty, that being cured by the settlement agreement. They're not applicable to the phase stipulated damages. They don't have no loss. You didn't mention that specific provision in your reservation rights letter. Why is that not waived on the policy? It might as to, even though you can't create coverage by waiver, but if it wasn't mentioned in the original one and is waived, it can't be waived to the future events. Because obviously, if you have a lawsuit in 2009, you don't need to be told that the policy that comes into effect a year later might cover you for something you've already been sued for. I mean, that part of it is to apprise them of what might be there. They would have the policy at that point. They would know about the lawsuit. They didn't take any detriment or reliance. And of course, that's really the gist of Harley's bill appears to be more of an estoppel argument because the prejudice and the failure of the insured's in those case to do something after the loss. All of the coverage issues in this case have to do with issues and facts that had already existed at the time the lawsuit was filed. They don't have anything to do of an insured being unwary about something and then taking a detrimental position in the trial of the case. You know, for example, Mr. Thomas, whether he was on the board through his role with the developer LLC, that was already clearly established factually. So there would be no prejudice on an ROR. And that's why the Harley's bill case really should have a limited application. And Judge, when you asked me at the outset, what's the South Carolina Supreme Court wanting to tell you? They're wanting to tell you that this case should be resolved on the merits of these coverage issues, not on a technicality. Because for 100 years in South Carolina, you can't get coverage out of thin air because the reservation rights letter may have had a few deficiencies. You can waive the requirement for a proof of loss in a property claim. You can waive a condition that you would forfeit the coverage because the insured didn't cooperate with you or didn't give you a sworn statement. You can waive those conditions that would evoke a forfeiture because they involve conduct that occurs after the loss. But if you go back and look historically at these cases, you can't pull coverage out of thin air. If the policy- I asked for a certification of this issue. We tried. We tried and we got denied on that. I would not think that would be inappropriate for this court if you're struggling with the breadth of Harleysville. I'd rather have it clarified with the money at stake in this case. I can have some clarity on it. South Carolina has kind of thrown us something here. They've thrown you a curveball. With one anomalous case, I would argue, in 100 years of cases that are very clear. All right. Thank you very much for your argument, gentlemen. You know that normally we'd come down and shake your hand. That's what we do as one of our critics. Not doing it today because of obvious reasons. Hopefully we'll be back in session doing it again when we come back in the near future. Thank you and have a nice, safe, enjoyable discussion.
judges: James Andrew Wynn, Allison J. Rushing, Diana Gribbon Motz